**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 |
| | ) | |
| LEXINGTON HEALTHCARE | ) | Case No. 03-11007 (MFW) |
| GROUP, INC. and LEXINGTON | ) | |
| HIGHGREEN HOLDING, INC., | ) | |
|     Debtors. | ) | (Jointly Administered) |
| _____ | ) | |
| | ) | |
| ELAINE CHAO, Secretary | ) | |
| of Labor, | ) | |
|     Plaintiff, | ) | |
| | ) | Adversary No. 04-53348 (MFW) |
|     v. | ) | |
| | ) | |
| LEXINGTON HEALTHCARE | ) | |
| GROUP, INC.; LEXINGTON | ) | |
| HIGHGREEN HOLDING, INC.; | ) | |
| ALFRED THOMAS GIULIANO, | ) | |
| Chapter 7 Trustee; HELLER | ) | |
| HEALTHCARE FINANCE, INC., | ) | |
| and HEALTHCARE SERVICE | ) | |
| GROUP, INC., | ) | |
|     Defendants. | ) | |

**MEMORANDUM OPINION**[1]

Before the Court is the Motion of the Plaintiff for Summary Judgment on its complaint seeking turnover of 401(k) contributions that the Debtors withheld from employee paychecks but never sent to the 401(k) plan administrator (the "Motion"). The Motion is opposed by the chapter 7 trustee and the secured creditors who assert security interests in the Debtors' assets. For the reasons stated below, the Court will deny the Motion.

---

[1] This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

I.   BACKGROUND

On April 2, 2003, Lexington Healthcare Group, Inc. ("Healthcare") and several of its affiliates filed petitions under chapter 11 of the Bankruptcy Code.  The cases were converted to chapter 7 on May 19, 2004, and Alfred Guiliano ("the Trustee") was appointed trustee.

On April 21, 2004, the Secretary of Labor filed a complaint against Healthcare and Lexington Highgreen Holding, Inc. (collectively the "Debtors") seeking turnover of certain employee 401(k) contributions.  An amended complaint was subsequently filed on November 19, 2004, to add Heller Healthcare Finance, Inc. ("Heller") and Healthcare Service Group, Inc. ("HSG") (collectively the "Secured Creditors") and the Trustee as defendants.

On November 12, 2004, the Plaintiff filed the Motion for summary judgment.  The Motion attached several affidavits in support.  The Trustee filed a response to the Motion, which is joined by the Secured Creditors, with an affidavit in support. Briefs have been filed and the matter is ripe for decision.

II.  JURISDICTION

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b) & 157(b)(2)(A), (K) & (O).

III. <u>DISCUSSION</u>

    A.   <u>Standard for Summary Judgment</u>

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure, the court may grant summary judgment if the moving party establishes that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  Issues of material fact are those "that might affect the outcome of the suit under governing law."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986);  <u>Horowitz v. Federal Kemper Life Assurance Co.</u>, 57 F.3d 300, 302 n.1 (3d Cir. 1995).  An issue is genuine when it is "triable," that is, when reasonable minds could disagree on the result.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

Once the moving party establishes the absence of a genuine issue of material fact, however, the burden shifts to the nonmoving party to "do more than simply show that there is some metaphysical doubt as to the material facts."  <u>Matsushita</u>, 475 U.S. at 586.  A party may not defeat a motion for summary judgment unless it sets forth specific facts, in a form that "would be admissible in evidence," establishing the existence of a genuine issue of material fact for trial.  Fed. R. Civ. P.

3

56(e).  Fireman's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982) ("Rule 56(e) does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegations or suspicions"); Olympic Junior, Inc. v. David Crystal, Inc., 463 F.2d 1141, 1146 (3d Cir. 1972) ("Conclusory statements, general denials, and factual allegations not based on personal knowledge would be insufficient to avoid summary judgment"); Tripoli Co., Inc. v. Wella Corp., 425 F.2d 932, 935 (3d Cir. 1970) (holding that to defeat summary judgment motion, "a party must now come forward with affidavits setting forth specific facts showing that there is a genuine issue for trial").  Unsworn statements of counsel in memoranda submitted to the court are insufficient to repel summary judgment.  Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990).

B.   Affidavits Submitted in Support

In this case, the Plaintiff presented several affidavits in support of its Motion.  Specifically, it submitted the affidavits of Philip B. Hale and Frederick J. Dalicandro, Jr., which state that they reviewed various documents of the Debtors and the 401(k) plan investment advisor, from which they calculated the sums that had been withheld but not remitted to the plan administrator.  The Trustee asserts that the Court should not consider these affidavits because they rely on unauthenticated records and, therefore, contain inadmissible hearsay.  See Fed.

R. Evid. 803(6), 902(11).  The Trustee did not present any affidavits in response to establish what the amount of the unremitted withholdings were.

Mr. Dalicandro is the Chief Financial Officer of the receiver which took over six of Healthcare's facilities on May 15, 2003.  The receiver took custody and control of Healthcare's business records, which include the records maintained by Healthcare relating to the 401(k) plan and the payroll company's records for all Healthcare's facilities.  From these records, Dalicandro stated he was able to determine the amount of contributions deducted from the employees' wages for the 401(k) plan during the relevant period.

Mr. Hale is a Senior Vice President with Devlin & Hale Associates, Inc. ("D&H"), which acted as the third party administrator of the 401(k) plan.  He stated that D&H invested the 401(k) plan assets with Nationwide Life Insurance Co. ("Nationwide"), which maintained the records of the contributions received and invested.  Nationwide provided information to Hale, who provided it to Dalicandro, from which Dalicandro determined the amounts that had been withheld from employees' wages but not delivered to the plan administrator for investment.

The Court will sustain the Trustee's objections to these affidavits.  While the receiver is the custodian of the Debtors' records, it is not the custodian of the records of the Debtors'

payroll company or Nationwide.  Those records have not been authenticated.  <u>See</u> Fed. R. Evid. 902(11).  The affiants' testimony about the contents of those records is, therefore, inadmissible hearsay.  <u>See</u> Fed. R. Evid. 802, 803(6).

In addition, the Trustee objects to the Court's consideration of the affidavit of Michael D. Logan, who stated that in January 2004 the Debtors had created an escrow account with their attorney and transferred $134,300 to that account to pay obligations of, inter alia, the 401(k) plan.  The Trustee argues that the affidavit is contradicted by the letter attached to it, which evidences that only $74,000 was transferred to that escrow fund.  The Plaintiff responds, however, that Logan's testimony is corroborated by the affidavit of the Trustee himself, wherein he states that his attorneys had demanded, and received, from the Debtors' attorney the $134,300 which had been held in the escrow account.

The Court agrees that it can consider the Logan affidavit. There is no contradiction between the affidavit and its attachment; the attachment only references one of the transfers. The Trustee's affidavit concedes that the entire sum of $134,300 was in the escrow fund.  The Court will, therefore, overrule the Trustee's objections to the Logan affidavit.

   C.   <u>Relevant Facts</u>

Several of the factual allegations in the complaint are not

disputed or are supported by the uncontested portions of the affidavits submitted by the Plaintiff in support of the Motion. As a result, the Court finds the following.

The Debtors sponsored or participated in a 401(k) plan for their employees. The 401(k) plan was an employee benefit plan subject to the Employee Retirement Income Security Act ("ERISA"). It allowed participants to have amounts withheld from their wages and contributed to the plan on their behalf. The Debtors were responsible for withholding the employees' contributions, segregating them from the Debtors' general assets, and transferring them to the plan administrator.

Between January and June of 2003, contributions were withheld from employee paychecks but were never transferred to the 401(k) plan administrator. This occurred both pre and post-petition.[2]

The Secured Creditors have liens on the Debtors' assets that arose before the contributions at issue were withheld. Heller has a lien on all the Debtors' assets and HSG has a lien on certain of the Debtors' assets, which is junior to Heller's liens.

In January 2004, nine months after the Debtors had filed their petition and six to twelve months after the contributions

---

[2] The Plaintiff alleges that the unremitted withholdings total in excess of $50,000 (approximately $48,000 of which was withheld pre-petition).

had been withheld from the employees, the Debtors' accounting manager, Logan, established an escrow account with the Debtors' attorney into which the Debtors deposited $134,300.  The escrow funds were to be used only for payments to employee benefits plans, including the 401(k) plan.

D.   Imposition of Trust

The Plaintiff asserts that a trust is imposed on the general assets of the Debtors for the benefit of the 401(k) plan.  ERISA provides that "all assets of an employee benefit plan shall be held in trust. . . ."  29 U.S.C. § 1103(a).

The Trustee asserts that ERISA merely establishes that the sums held by the 401(k) plan administrator are held in trust.  The Trustee argues that since the Debtors are not in possession of those funds, no trust may be imposed on any other assets of the Debtors.

1.   Trust on All Assets of Debtors

The Plaintiff disagrees and argues that all the Debtors' assets are subject to the trust.  ERISA does not define the term "assets of an employee benefit plan."  Instead, the Plaintiff relies on the regulations promulgated by the Department of Labor to implement ERISA, which provide that "the assets of the plan include amounts . . . that a participant has withheld from his wages by an employer, for contribution to the plan as of the earliest date on which such contributions can reasonably be

segregated from the employer's general assets." 29 C.F.R. § 2510.3-102(a) (the "Regulation").  Thus, the Plaintiff asserts that, in addition to the assets held by the plan administrator, a trust was imposed on the contributions withheld by the Debtors from the employees' wages notwithstanding the fact that they were never remitted to the plan administrator.  Further, the Plaintiff contends that because the contributed funds were to be segregated from the Debtors' "general assets," a trust must be imposed on all the Debtors' assets for the benefit of the 401(k) plan beneficiaries.

The Trustee argues that ERISA simply imposes a trust on the funds once they are deposited into the plan.  The Trustee contends that the Regulation cannot expand the scope of the trust imposed by ERISA and certainly cannot expand it to cover all the Debtors' assets.  Because there is no evidence that the contributions were withheld and delivered to the plan administrator, the Trustee argues that no trust can be imposed. See, e.g., Golden v. wwwrrr, Inc. (In re wwwrrr, Inc.), No. Civ. 01-346, 2002 WL 264947, at *5 (D. Minn. Feb. 22, 2002) (concluding that no trust could be imposed because only net payroll was paid to the employees).

The Court rejects the analysis in Golden.  If the employer does not pay the gross wages to the employees (or to the plan as directed by the employees), then clearly some portion of the

employees' wages have been "withheld."

The Trustee's argument also fails because, under his theory, no trust would arise unless the funds were in fact paid to the 401(k) plan.  If that were the case, however, no trust would be necessary!  A trust is necessary (and every Circuit Court to consider the issue has imposed one) when the employer withholds the contributions but fails to remit them to the plan.  See, e.g., Navarre v. Luna (In re Luna), 406 F.3d 1192, 1199 (10th Cir. 2005) (concluding that unremitted contributions are plan assets under ERISA because "[p]ursuant to ordinary notions of property rights, the plan holds a future interest in the collection of the contractually-owed contributions."); Bannistor v. Ullman, 287 F.3d 394, 402 (5th Cir. 2002) (defining ERISA plan assets to "include employee contributions to benefit plans which are withheld from employees' paychecks and for deposit into their benefit plans, even though the contributions have not actually been delivered to the benefit plan"); United States v. Grizzle, 933 F.2d 943, 947 (11th Cir. 1991) (holding that employee contributions are plan assets even if they have not been delivered to the plan).

The concurring opinion in Bannistor, in reliance on the Regulation, concluded that the sums withheld from employees' wages become plan assets (and trust funds) immediately upon being withheld rather than at the time the employer is required to

segregate and transfer them to the plan.  287 F.3d at 410 n.1 (Garza, J., specially concurring).  Judge Garza reasoned that:

> When companies deduct contributions from employee paychecks, those amounts are not loans to the company that it can use for any purpose until the loan becomes due.  Those contributions are monies that have already been paid to the employees as compensation.  The company is acting merely as a steward; holding the plan participants' property until the assets can be segregated into a separate fund.  The company may not dip into the plan assets to use for its own purposes any more than it could dip into the private bank accounts of its employees to fund its shortfalls; once the contributions are withheld, the money no longer belongs to the company.

Id.  See also In re College Bound, Inc., 172 B.R. 399, 404 (Bankr. S.D. Fla. 1994) (holding that "once employee wages are withheld for purposes of contribution to an ERISA qualified plan, the wages become plan assets held in trust by the employer.  This is true even if the monies were not segregated, provided that the monies were available in the Debtor's general funds.")

The Court agrees with the above authority and the Plaintiff that the employee contributions became plan assets when they were withheld.  However, it is one thing to conclude that withheld employee contributions become trust funds at the time they are withheld; it is quite another to conclude that the trust is imposed on all the assets of the employer.  The cases cited by the Plaintiff support the first conclusion, but not the second. In fact, those cases did not deal with the issue that this Court faces: whether the trust imposed by ERISA extends to all assets

11

of the employer.³  The Court concludes that neither ERISA nor the Regulation impose a trust on all assets of the employer.  Rather, a trust is imposed only on the contributions that were withheld from the employees' wages.

### 2.   Trust on Funds Withheld, Not Remitted

The Plaintiff asserts nonetheless that the trust imposed by ERISA and the Regulation attached to the general assets of the Debtors, because it is from those general assets that the Debtors were required to segregate the funds.

The Trustee disagrees.  He asserts that the trust is imposed, if at all, only on the funds withheld by the Debtors, which he argues have now been dissipated.  The Trustee contends that, in order to enforce the trust, the Plaintiff must trace the funds withheld to funds currently held by the Trustee.  Because the Plaintiff failed to present any such evidence, the Trustee argues the Motion must be denied.

---

   ³  In Luna, the Court addressed whether the debtors were ERISA fiduciaries.  406 F. 3d at 1196.
   In Grizzle, the Court addressed and rejected the argument of an employer's president that funds he embezzled were not trust funds because he had never delivered them to the plan administrators.  933 F.3d at 946.
   In Bannistor, the Court found an employer who failed to deposit employee 401(k) contributions to the plan prior to filing a chapter 11 case violated its fiduciary duty under ERISA.  287 F.3d at 397-98.
   The College Bound Court found that employee withholdings were ERISA trust funds because there were sufficient funds available in the debtor's general funds.  172 B.R. at 404.

The Plaintiff responds that the tracing concept is one used only with common law trusts and not with statutory trusts.  See, e.g., Begier v. IRS, 496 U.S. 53, 62-63 (1990) (holding that tracing rules applicable to common law trusts, where no trust is created until the res is identified, are not helpful in analyzing trusts created by statute in amounts rather than in specific property).

The Plaintiff argues that the statute considered by the Court in Begier[4] is similar to the provision of ERISA at issue here, because they both create a trust in an amount of funds, not in any specific property.  Compare 26 U.S.C. § 7501 with 29 C.F.R. § 2510.3-102(a).  Therefore, the Plaintiff asserts that it is not required to trace the trust funds and that the trust must be imposed on all property of the Debtors.

The Court disagrees with this reading of Begier.  While concluding that tracing is not required for a statutory trust, the Supreme Court in Begier specifically held that, based on the legislative history, the proponent of a statutory trust must nonetheless show "some connection between the . . . trust and the assets sought to be applied" to the debtor's trust obligations.

---

[4] The Begier case involved section 7501 of the Internal Revenue Code.  496 U.S. at 62-63.  Section 7501 provides: "Whenever any person is required to collect or withhold any internal revenue tax from any other person and to pay over such tax to the United States, the amount of tax so collected or withheld shall be held to be a special fund in trust for the United States."  26 U.S.C. § 7501.

496 U.S. at 65-66 (emphasis added).  Thus, the Court rejects the Plaintiff's argument that the trust is imposed automatically on all assets of the Debtors and concludes that the Plaintiff must show some nexus between the withheld funds and the funds on which it seeks to impose a trust.

### 3.  Nexus to Funds Withheld

The Plaintiff argues nonetheless that there is a nexus between the funds withheld and the Debtors' general assets, because under the Regulation the Debtors were required to segregate the withheld funds from their general assets.  This, the Plaintiff asserts, creates a nexus between the Debtors' general assets and the withheld funds sufficient to satisfy Begier.

The Court rejects this argument because it suggests that the act of commingling the withheld funds with the Debtors' general assets itself creates the necessary nexus.  Such an argument is inconsistent with Begier, which concluded that it is the commingling itself that creates the need to show a nexus.  Id. at 64-66.

The facts in Begier suggest what may qualify as a nexus.  In that case, the funds had actually been paid to the IRS to satisfy the debtor's trust fund obligation.  Id. at 56.  The Court concluded that the voluntary payment was "sufficient to establish the required nexus between the 'amount' held in trust and the

funds paid." <u>Id.</u>

As in <u>Begier</u>, there was an actual payment in this case. In January 2004 the Debtors did segregate funds for, inter alia, the 401k plan. Therefore, some nexus has been shown. <u>Id.</u> at 67.

The Trustee argues, however, that, unlike section 7501 of the Internal Revenue Code, ERISA does not actually require that any funds be withheld at the time the wages are paid. The Trustee notes that the payment into the escrow account was made six to twelve months after the Debtors withheld the contributions. He argues that there is no evidence that the funds placed into the escrow account were in fact the sums withheld. Nor is there any evidence, the Trustee asserts, that the Debtors expressly authorized the escrow. Instead, the Trustee suggests that Logan placed the funds in escrow to avoid personal liability for the Debtors' failure to remit the withheld contributions.

The Court disagrees with the Trustee's argument. There is no requirement that the funds placed in escrow be the actual funds withheld from the employees. As the Court stated in <u>Begier</u>: "Under a literal reading of [the legislative history], the bankruptcy trustee could not avoid any voluntary prepetition payment of trust-fund taxes, regardless of the source of the funds. . . . The debtor's act of voluntarily paying its trust-fund tax obligation therefore is sufficient to establish the

15

required nexus between the 'amount' held in trust and the funds paid." 496 U.S. at 66-67. This is further supported by the Regulation, which requires that the employer segregate the withheld contributions from the employer's general assets but allows up to 45 days to do so. 29 C.F.R. § 2510.3-102(a). Therefore, the Court concludes that the Plaintiff has established a nexus between the funds placed in the escrow account in January 2004 and the funds withheld from the employees.

The Trustee argues, however, that because the funds have now been removed from the escrow account and commingled with the estate's general assets, the nexus that existed has been destroyed. The Plaintiff may, however, be able to establish a nexus between the escrowed funds and the funds currently being held by the Trustee.

To identify common law trust assets, some Courts have applied a tracing formula, such as the lowest intermediate balance test ("LIBT").

> The LIBT is a judicial construct that some federal courts have applied to ease a beneficiary's tracing burden when "a trustee commingles trust funds with other monies in a single account." . . . The LIBT "allows trust beneficiaries to assume that trust funds are withdrawn last from a commingled account. Once trust money is removed, however, it is not replenished by subsequent deposits. Therefore, the lowest intermediate balance in a commingled account represents trust funds that have never been dissipated and which are reasonably identifiable."

City of Farrell v. Sharon Steel Corp., 41 F.3d 92, 102 (3d Cir.

1994) (quoting In re Columbia Gas Sys., Inc., 997 F.2d 1039, 1063 (3d Cir. 1993)).  The Court disagrees with the Plaintiff's contention that tracing may never be used in the context of statutory trusts.  Because the nexus requirement is less exacting than tracing, a nexus would be shown if the Plaintiff were able to trace the escrowed funds to the funds currently being held by the Trustee.

At this juncture, however, the Plaintiff has provided insufficient evidence for the Court to trace or otherwise to find a nexus between the funds withheld from the employees and the funds held by the Trustee.  Because material issues of fact remain open with respect to the identification of the trust funds, the Court cannot grant the Plaintiff's Motion for summary judgment.

    D.   Effect of Security Interests

The Trustee argues that, even if a trust was imposed, it is primed by the security interests of the Secured Creditors which attached to the Debtors' general assets before the funds were withheld.

The Plaintiff disagrees.  Because the funds in question are held in trust, the Plaintiff asserts they are not property of the estate pursuant to section 541(d).  11 U.S.C. § 541(d) ("Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes

property of the estate . . . only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold."). See also Sharon Steel, 41 F.3d at 95 (holding that property which the debtor holds in trust for another is not property of the estate).

The Court agrees with the Plaintiff.  In addition, under Article 9 of the Uniform Commercial Code, a security interest is enforceable only if, among other things, "the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party."  Del. Code Ann. tit. 6, § 9-203(b)(2).  The withheld funds belong to the Debtors' employees, not to the Debtors.  The Debtors are "acting merely as a steward; holding the plan participants' property until the assets can be segregated into a separate fund."  Bannistor, 287 F.3d at 410 n.1 (Garza, J., specially concurring).  See also In re Benefit Mgmt. Corp., No. MM7-87-03292, 1988 WL 384076, at *10-11 (Bankr. W.D. Wis. November 21, 1988) (concluding that security interest in deposit account that included plan assets was void because employer had no rights in the plan assets to which a security interest might attach).

Even if the Bankruptcy Code and Article 9 did not prevent security interests from being enforced, ERISA itself prohibits the imposition of a security interest on the plan assets.

Section 1103(c)(1) expressly provides that "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administrating the plan." 29 U.S.C. § 1103(c)(1).

The Trustee argues that permitting the Plaintiff to prime the Secured Creditors' liens on the general assets of the Debtors is unsupportable. See, e.g., In re Riverside Elec. Co., 211 B.R. 685, 688 (Bankr. E.D. Mo. 1997) (precluding 401(k) plan trustees from recovering unsegregated employee contributions from the debtor's account receivables which were subject to a security interest). The Riverside decision is distinguishable. In that case, the debtor had severe financial difficulties resulting in negative balances in its accounts at several times between the withholding and the request for payment of the withheld funds. Id. at 686. Therefore, under tracing principles, the plan trustees could not prevail. Id. at 688. Further, the trustees could establish no nexus between the withheld funds and the accounts receivable on which the secured creditor had a lien. Id.

In this case, to the extent the Plaintiff can establish a nexus between the assets currently held by the Trustee and the withheld employee contributions to the 401(k) plan, a trust must

be imposed. See Begier, 496 U.S. at 66. If a trust is imposed, the trust funds are not property of the estate and the security interests cannot attach to them. 11 U.S.C. § 541(d). Because a material issue remains in dispute (namely whether there is any nexus between the withheld funds and the funds in the hands of the Trustee), the Plaintiff's Motion for summary judgment must be denied.

IV. CONCLUSION

For the foregoing reasons, the Court will deny the Plaintiff's Motion for summary judgment.

An appropriate order is attached.

BY THE COURT:

Mary F. Walrath

Dated: December 15, 2005

Mary F. Walrath
United States Bankruptcy Judge