**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 |
| | ) | |
| AE LIQUIDATION, INC., et al., | ) | |
| | ) | |
| Debtors. | ) | Case No. 08-13031-MFW |
| _____ | ) | |
| | ) | |
| JORGE MATA, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Adversary No. 08-51891-MFW |
| | ) | |
| ECLIPSE AEROSPACE, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**[1]

Before the Court is the Motion to Dismiss the above captioned adversary proceeding without prejudice filed by the plaintiffs (collectively, the "Production Line Group") for lack of subject matter jurisdiction. After considering the arguments presented by both parties, we conclude that the Motion must be denied for the reasons set forth below.

---

[1] In this Memorandum Opinion, the Court makes no findings of fact and conclusions of law. Fed. R. Bankr. P. 7052 (applying Rule 52(a)(3) which provides that "[t]he court is not required to state findings or conclusions when ruling on a motion under Rule 12 . . . ."). The facts recited are those alleged in the Complaint or reflected in pleadings filed in this adversary proceeding or the bankruptcy case.

I.   <u>BACKGROUND</u>

Eclipse Aviation Corporation (the "Debtor") developed and manufactured private jets.  The Debtor agreed to develop and manufacture jets for each member of the Production Line Group, pursuant to various purchase agreements (the "Aircraft Purchase Agreements").

Under each Aircraft Purchase Agreement, a member of the Production Line Group separately agreed to purchase an Eclipse 500 airplane from the Debtor and paid a portion or all of the purchase price of its airplane.  The Debtor was to build a specific and identifiable airplane according to the specifications and requirements of the particular purchaser.

Prior to the completion and delivery of the airplanes, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on November 25, 2008.  Thereafter, the Production Line Group acted to preserve and protect its members' ownership interests in the undelivered aircraft (the "WIP Aircraft"), by commencing this adversary proceeding (the "WIP Adversary Proceeding") by filing a complaint on December 22, 2008, for Declaratory and Other Relief (the "Complaint").  In the Complaint, the Production Line Group seeks a determination that its members possess property interests and rights in the WIP Aircraft, that those property interests and rights are superior to any interests and rights of the Debtor, that they are entitled

2

to replevin the WIP Aircraft, that they are entitled to specific performance, that they are entitled to recovery of the WIP Aircraft, that they hold equitable liens and constructive trusts on the WIP Aircraft, that the WIP Aircraft are not property of the Debtor's bankruptcy estate, that the WIP Aircraft may not be sold under section 363(b), and/or that the WIP Aircraft may not be sold free and clear of their interests under section 363(f).

After filing its chapter 11 petition, the Debtor sought to sell substantially all of its assets. On January 23, 2009, the Court entered an order approving the sale of the Debtor's assets to EclipseJet Aviation International, Inc. ("EclipseJet"). EclipseJet was unable to obtain financing for the asset purchase, however, and the sale never closed. As a result, on February 24, 2009, the Ad Hoc Committee of Secured Noteholders filed a motion for an order converting the Debtor's chapter 11 bankruptcy case to a case under chapter 7 of the Bankruptcy Code. The Court granted the motion on March 5, 2009, and Jeoffrey L. Burtch was appointed the trustee (the "Trustee"). The Production Line Group amended the Complaint on July 16, 2009, to name the Trustee as a defendant.

The Trustee sought to sell the Debtor's assets as quickly as possible, citing liquidity problems and regulatory concerns. On July 31, 2009, the Trustee filed a Motion for an order authorizing the sale of substantially all of the estate's assets

free and clear of liens, claims and encumbrances under section
363(b) and (f) of the Bankruptcy Code pursuant to an asset
purchase agreement (the "APA") with Eclipse Aerospace, Inc. (the
"Buyer").

On August 14, 2009, the Production Line Group filed a
Limited Objection and Reservation of Rights (the "Limited
Objection") to the proposed Sale Motion.  The Production Line
Group did not object to the proposed sale of the assets, despite
claiming that the WIP Aircraft were not property of the estate.
Rather, it sought to preserve its rights by adding provisions to
the sale order and APA that would allow it to recover the WIP
Aircraft from the Buyer if it succeeded in the WIP Adversary
Proceeding.  The Buyer agreed to buy the WIP Aircraft subject to
the rights of the Production Line Group as the Court may
determine them.  On August 28, 2009, the Court entered an Order
(the "Sale Order"), authorizing the sale to the Buyer, on the
terms of the APA between the Buyer and the Trustee.

Under the approved APA, the Buyer assumed <u>inter alia</u> "the
obligation of Seller (Trustee) to return any aircraft or aircraft
parts held by the Seller (Trustee) as of the date of the Closing
or arising out of any Final Order in the WIP Adversary
Proceeding[] . . . ."  The Buyer did not, however, assume <u>all</u>
liabilities related to the WIP Aircraft, because it did not
assume "to the extent applicable, any claims against Seller

4

(Trustee), the Companies (Debtors) or the Chapter 7 Estate for
(a) specific performance; or (b) any monetary claims against the
Seller (Trustee), including but not limited to, any claims to
deposits or segregated funds . . . ."  The Sale Order contains
similar language that limits the Buyer's liability to return the
WIP Aircraft to the Production Line Group, if it is found that
the WIP Aircraft are not property of the Debtor's estate.  The
Sale Order specifically states that "[t]he Buyer shall not be
liable for: (1) specific performance; or (2) any monetary claims
against the Seller . . . " related to the WIP Aircraft.

Subsequent to entry of the Sale Order, the Production Line
Group filed on February 9, 2010, a Motion to Dismiss the
Complaint without prejudice for lack of subject matter
jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of
Civil Procedure.  Briefing on the Motion was completed on March
17, 2010, and the matter is now ripe for decision.


II.    <u>JURISDICTION</u>


The Court has jurisdiction to determine whether it has
subject matter jurisdiction over the WIP Adversary Proceeding.
<u>See, e.g.</u>, <u>Chicot County Drainage Dist. v. Baxter State Bank</u>, 308
U.S. 371, 376-77 (1940) (holding that a federal court has

authority to determine whether it has subject matter jurisdiction over a dispute).


III. <u>DISCUSSION</u>

    A.   <u>Standard for Dismissal under Rule 12(b)(1)</u>

    Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a federal court may dismiss a complaint for lack of subject matter jurisdiction.  A motion to dismiss under Rule 12(b)(1) challenges the power of the federal court to hear a claim or case.  <u>See, e.g.</u>, <u>Democracy Rising PA v. Celluci</u>, 603 F. Supp. 2d 780, 788 (M.D. Pa. 2009).  "If a court lacks subject matter jurisdiction, it is generally barred from taking any action that goes to the merits of the case."  <u>Shortt v. Richlands Mall Assocs., Inc.</u>, No. 90-2056, 1990 WL 207354, at *4 (4th Cir. Dec. 19, 1990).  Courts may consider subject matter jurisdiction at any time and must dismiss an action if subject matter jurisdiction is lacking.  Fed. R. Civ. P. 12(h)(3).  The issue can be raised in any manner, including on motion of one of the parties or by the court sua sponte.  <u>See, e.g.</u>, <u>In re Eltech, Inc.</u>, 313 B.R. 659, 662 (Bankr. W.D. Pa. 2004).

    Motions under Rule 12(b)(1) can challenge subject matter jurisdiction through either a facial attack or a factual attack. A "facial attack" contests the sufficiency of the pleadings. <u>See, e.g.</u>, <u>Common Cause of Pa. v. Pennsylvania</u>, 558 F.3d 249, 257

(3d Cir. 2009).  A court accepts as true all well-pleaded factual allegations, viewing them in the light most favorable to the party asserting jurisdiction.  See, e.g., In re Kaiser Group Int'l, Inc., 399 F.3d 558, 561 (3d Cir. 2005).

In contrast, a "factual" attack argues that, although the pleadings facially satisfy jurisdictional prerequisites, one or more of the allegations is untrue, rendering the controversy outside the court's jurisdiction. See, e.g., Democracy Rising PA, 603 F. Supp. 2d at 788.  In such circumstances, a court is required to evaluate the merits of the disputed allegations because "the trial court's . . . very power to hear the case" is at issue.  Id.  In a factual attack, a court's analysis of the merits is not confined to the allegations in the complaint; it can consider evidence outside the pleadings to resolve factual issues bearing on jurisdiction.  See, e.g., Davis v. Soc. Sec. Admin., No. Civ. A. 02-1595-SLR, 2003 WL 21219821, at *1 (D. Del. May 20, 2003).

In a Rule 12(b)(1) motion to dismiss, the party invoking the federal court's jurisdiction bears the burden of establishing the court has jurisdiction.  See, e.g., Common Cause of Pa., 558 F.3d at 257.  A motion to dismiss for want of subject matter jurisdiction will be granted only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

which would entitle him to relief.  See, e.g., Calhoun v. United States, 475 F. Supp. 1, 2-3 (S.D. Cal. 1977).

B.   <u>Plaintiff's Motion to Dismiss</u>

The Buyer contends that the Production Line Group is seeking to invert the Federal Rules of Civil Procedure in moving to dismiss its own Complaint.  The Buyer argues that the Production Line Group's choice of Rule 12(b)(1) "appears inapposite" and argues that Rule 41(a)(2) is the proper standard for a motion to dismiss filed by a plaintiff.  <u>See</u> Fed. R. Civ. P. 41(a)(2) ("[A]n action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper.")

The Court disagrees.  While a plaintiff's dismissal of its own complaint for lack of subject matter jurisdiction is unusual, courts are not precluded from considering jurisdiction under such a motion.  <u>See, e.g.</u>, <u>Boggs v. Die Fliedermaus, LLP</u>, No. 99 Civ. 2451 (RWS), 2004 WL 1554449, at *1 (S.D.N.Y. Jul. 7, 2004) (stating that whether plaintiffs may move for dismissal of their own claims pursuant to Rule 12(b)(1) need not be resolved, as a court may address, sua sponte, the question of subject matter jurisdiction at any time).  Furthermore, a court should not consider a Rule 41(a)(2) motion when subject matter jurisdiction is in question, because subject matter jurisdiction has its roots in the constitutional concerns of federalism, while Rule 41 is premised on judicial economy and equity.  <u>See</u> <u>Shortt</u>, 1990 WL 207354, at *4; <u>see also</u> <u>In re Fed. Election Campaign Act Lit.</u>, 474 F. Supp. 1051 (D.C. Cir. 1979) (holding that a court is

precluded from undertaking the balancing test under Rule 41(a)(2) if its subject matter jurisdiction is in question).

For these reasons, the Court concludes that it has authority to consider whether it has subject matter jurisdiction over the WIP Adversary Proceeding.

C.   Res Judicata

The Buyer argues that jurisdiction existed prior to the entry of the Sale Order and that the Court's determination that it had jurisdiction to enter the Sale Order precludes the Plaintiff's Motion to Dismiss.  The Buyer contends that the Motion to Dismiss is an impermissible collateral attack on the provisions of the Sale Order under which the Court reserved jurisdiction over the WIP Adversary Proceeding.  See, e.g., Travelers Indem. Co. v. Bailey, 129 S. Ct. 2195, 2205 (2009) (holding that final orders of the bankruptcy court have res judicata effect and "are not any the less preclusive because the attack is on the Bankruptcy Court's conformity with its subject matter jurisdiction, for even subject matter jurisdiction may not be attacked collaterally.").

The Production Line Group asserts that res judicata is not applicable to its Motion to Dismiss.  Res judicata applies when a party that has had an opportunity to litigate the question of subject matter jurisdiction attempts to reopen that question in a collateral attack after an adverse judgment.  Ins. Corp. of

10

<u>Ireland, Ltd. v. Compagnie des Bauxites de Guinee</u>, 456 U.S. 694, 702 n.9 (1982). Furthermore, it argues that for res judicata to apply, the party asserting the defense must show that a final judgment on the merits of an action involving the same parties bars a subsequent suit based on the same cause of action. <u>Eastern Minerals & Chems. Co. v. Mahan</u>, 225 F.3d 330, 336 (3d Cir. 2000).

In <u>Travelers</u>, members of a class who had been party to the original bankruptcy proceeding sought to attack the jurisdiction of the court to enjoin their claims against the debtor's insurer more than two decades after the order. The Supreme Court stated that anyone who objected to the bankruptcy court's subject matter jurisdiction was free to do so when the orders were on direct appeal in 1986, but once those orders became final, they had res judicata effect as to the "parties and those in privity with them." <u>Travelers</u>, 129 S. Ct. at 2205 (<u>quoting</u> <u>Nevada v. United States</u>, 463 U.S. 110, 130 (1983)). "[T]o the extent respondents argue that the 1986 Orders should not be enforced according to their terms because of a jurisdictional flaw in 1986, this argument is an impermissible collateral attack." <u>Id.</u> at 2206 n.7. The Court explained the purpose of applying the doctrine of res judicata, saying that if "courts could evaluate the jurisdiction that they may or may not have had to issue a final judgment, the rules of res judicata . . . would be entirely

11

short-circuited." <u>Id.</u> at 2206 (<u>quoting</u> <u>In re Optical Techs.,</u>
<u>Inc.</u>, 425 F.3d 1294, 1307 (11th Cir. 2005)).

The current proceeding is easily distinguishable from
<u>Travelers</u>.  <u>Travelers</u> precludes collateral attacks on subject
matter jurisdiction after a final judgment has been entered and
affirmed on direct appeal.  The Production Line Group is not
challenging the Court's subject matter jurisdiction to issue the
Sale Order.  The Production Line Group challenges the Court's
subject matter jurisdiction in the WIP Adversary Proceeding,
which is a live controversy with no final order entered in favor
of either party.

Further, res judicata does not apply because the Sale Motion
was not the same cause of action as the WIP Adversary Proceeding.
In bankruptcy, two proceedings are not part of the same cause of
action unless "the factual underpinnings, theory of the case, and
relief sought against the parties to the proceeding are so close
to a claim actually litigated in the bankruptcy that it would be
unreasonable not to have brought them both at the same time in
the bankruptcy forum."  <u>In re USN Commc'ns, Inc.</u>, 280 B.R. 573,
586 (Bankr. D. Del. 2002).  These factors are clearly not present
in this case, as the Production Line Group does not seek to
overturn or address any issue covered by the Sale Order.
Further, as the Production Line Group notes, the present issue
regarding lack of subject matter jurisdiction did not arise until

after the Sale Order was entered.  The Production Line Group
acknowledges that the Court had subject matter jurisdiction at
the time of the Sale Order. Its Rule 12(b)(1) claim did not arise
until after the Sale Order was entered, when the assets were
transferred to the Buyer.  Therefore, the Court concludes that
the doctrine of res judicata does not apply to the current Motion
to Dismiss for lack of subject matter jurisdiction.

    D.   <u>Bankruptcy Court Jurisdiction</u>

The Production Line Group argues that the Court no longer
has jurisdiction (core or non-core) over the WIP Adversary
Proceeding because the sale of the WIP Aircraft has been
consummated.

Federal bankruptcy jurisdiction extends to four categories:
(1) cases under title 11, (2) proceedings arising under title 11,
(3) proceedings arising in a case under title 11, and (4)
proceedings related to a case under title 11.  28 U.S.C. §§ 157 &
1334.  <u>See also</u> <u>In re Combustion Eng'g Inc.</u>, 391 F.3d 190, 225
(3d Cir. 2004).

Bankruptcy court jurisdiction is divided into "core" and
"non-core" proceedings.  Cases under title 11, proceedings
arising under title 11, and proceedings arising in a case under
title 11 are core proceedings.  <u>Combustion Eng'g</u>, 391 F.3d at
225-26.  Cases under title 11 refers merely to the bankruptcy
petition itself.  <u>See, e.g.</u>, <u>In re Marcus Hook Dev. Park Inc.</u>,

943 F.2d 261, 264 (3d Cir. 1991).  Proceedings arising under
title 11 refers to the steps within the case and to any sub-
action within the case that may raise a disputed or litigated
matter.  See, e.g., In re Wolverine Radio Co., 930 F.2d 1132,
1141 n.14 (6th Cir. 1991).  Proceedings arising in a case under
title 11 refers to proceedings that are not based on any right
expressly created by title 11, but nevertheless would have no
existence outside the bankruptcy case.  Wood v. Wood (In re
Wood), 825 F.2d 90, 97 (5th Cir. 1987).  Core proceedings are all
proceedings that invoke a substantive right provided by title 11
or could arise only in the context of a bankruptcy case.  See,
e.g., In re Guild and Gallery Plus, Inc., 72 F.3d 1171, 1178 (3d
Cir. 1996).

Proceedings related to a case under title 11, on the other
hand, are non-core.  See, e.g., In re Resorts Int'l, Inc. 372
F.3d 154, 162 (3d Cir. 2004).  "Related to" jurisdiction grants
the bankruptcy court the power to hear cases that do not fall
under title 11 and that could exist independent of the bankruptcy
proceedings, but only when there is some nexus between the
related civil proceeding and the title 11 case.  See, e.g., In re
Pacor, 743 F.2d 984, 994 (3d Cir. 1984) ("An action is related to
bankruptcy if the outcome could alter the debtor's rights,
liabilities, options, or freedom of action . . . and which in any

14

way impacts upon the handling and administration of the
bankruptcy estate.").

      1.   <u>Mootness</u>

The Production Line Group asserts that the core bankruptcy
causes of actions raised by its Complaint are now moot, leaving
it with only state law claims against a non-debtor party (the
Buyer).  The Production Line Group asserts that Counts VIII
through XIII of the Complaint were originally core proceedings
falling under the Court's subject matter jurisdiction, but have
become moot now as a result of the entry of the Sale Order and
APA.

A Rule 12(b)(1) argument that a case is moot due to an event
that occurred after the filing of the complaint is a factual
attack on jurisdiction.  <u>See, e.g.</u>, <u>Gordon v. East Goshen Twp.</u>,
592 F. Supp. 2d 828, 837 (E.D. Pa. 2009) (finding that
plaintiffs' First Amendment claims based on lack of access to the
state courts were made moot when their claims were reviewed in
state court).  Article III of the United States Constitution
requires that a plaintiff's claim be live not just when it is
first brought but throughout the entire litigation.  <u>Id.</u> at 837-
38 (citing <u>Lusardi v. Xerox Corp.</u>, 975 F.2d 964, 974 (3d Cir.
1992)); <u>Eltech</u>, 313 B.R. at 664 (noting that jurisdiction must
exist at all times, and the court is "duty bound to ascertain
throughout the course of a bankruptcy matter" whether subject

15

matter jurisdiction exists).  The central question of all
mootness issues is whether changes in circumstances from what
prevailed at the beginning of the litigation have forestalled any
occasion for meaningful relief.  Id. at 836.

a.   Section 363 Claims

Counts XI through XIII ("Section 363 Claims") sought to
prevent any sale of the WIP Aircraft pursuant to section 363 of
the Bankruptcy Code that would convey to the Buyer clear title in
the WIP Aircraft.  The Production Line Group argues that these
claims are moot because the Court has already entered the Sale
Order, which insulates the estate from any effect of a
determination of title to the WIP Aircraft.

The Court agrees with the Production Line Group that its
Section 363 Claims were made moot by the entry of the Sale Order
and closing under the APA.  The Production Line Group's Section
363 Claims sought to either prevent the sale or impose terms on
any sale.  The Sale Order is now final and, therefore, no further
relief can be granted based on these claims.  Therefore, the
Section 363 Claims cannot be a basis for this Court to exercise
jurisdiction over the WIP Adversary Proceeding.

b.   Section 541 Claims

Counts VIII through X ("Section 541 Claims") sought a
declaration that the WIP Aircraft was not property of the estate.
The Production Line Group argues that these claims are now moot

as the terms of the APA and the Sale Order conveyed to the Buyer all the estate's right, title, and interest in the WIP Aircraft, subject only to the state law claims of the Production Line Group that its members, not the estate, have title or liens on the WIP Aircraft.  Therefore, the Production Line Group argues that the estate has no further interest in any decision as to whether the WIP Aircraft were property of the estate at the time of the sale

The Buyer responds that the Court had jurisdiction over the Section 541 Claims at the time the Sale Order was entered and that the Court's jurisdiction was not divested when the sale was consummated.  In fact, the Buyer argues that the Court must determine what was property of the estate at the time of the sale in order to determine who now has superior rights in the WIP Aircraft.  Because the Court had jurisdiction over the Section 541 Claims initially, the Buyer argues that "it is axiomatic that in order to effectively administer the bankruptcy estate the bankruptcy court must retain jurisdiction over the question of what is or is not property of the bankruptcy estate."  Further, the Buyer argues that the Court has authority to interpret and enforce its own orders.

The Production Line Group argues that the Court no longer has jurisdiction to decide the Section 541 Claims, as they relate to property that is no longer property of the estate.  See, e.g., In re Hall's Motor Transit Co., 889 F.2d 520, 522 (3d Cir. 1989).

17

In the Hall's Motor Transit case, the Third Circuit held that subject matter jurisdiction did not exist over an adversary proceeding to enforce the automatic stay commenced by a purchaser of real property from the debtor's estate.  The Third Circuit stated that "the bankruptcy court's jurisdiction does not follow the property, but rather, it lapses when the property leaves the debtor's estate."  Id. at 522.

The Buyer responds that the Court has jurisdiction over the Section 541 Claims, because unlike in Hall's Motor Transit, where there was no question that the property was not property of the estate, here that issue has not been decided.  The Buyer is obligated under the Sale Order and the APA to return the WIP Aircraft to the Production Line Group if the WIP Aircraft was not owned by the estate at the time of the sale.  The Buyer argues that the Court clearly has core jurisdiction to determine whether the assets were or were not property of the estate at the time of the sale.  See 28 U.S.C. § 1334(e) (stating that the court in which a case under title 11 is commenced or is pending "shall have exclusive jurisdiction - (1) of all property, wherever located, of the debtor as of the commencement of such case, and of property of the estate").

The Court agrees with the Buyer that it has exclusive jurisdiction to determine whether or not the WIP Aircraft was property of the estate at the time of the sale.  See, e.g., In re

18

<u>Touch Am. Holdings, Inc.</u>, 401 B.R. 107, 117 (Bankr. D. Del. 2009)
(stating approvingly that "[v]arious courts have concluded that
matters requiring a declaration of whether certain property comes
within the definition of 'property of the estate' as set forth in
Bankruptcy Code § 541 are core proceedings.")

Further, the Buyer argues that it acquired the rights,
claims and/or defenses of the Trustee or the estate.  The Sale
Order provides that "the Buyer shall be substituted for the
Chapter 7 Trustee as a party in the adversary proceedings . . .
and at the election of Buyer, shall be allowed to intervene, and
shall have all rights, claims and defenses to which the Debtor,
chapter 7 estates and/or the Trustee could assert . . . ."  At
the sale hearing, the Buyer's attorney specifically stated that
"[t]he Buyer is not prepared to release whatever hypothetical
lien rights the estate has under Section 544."  Therefore, the
Buyer argues that the rights it acquired to defend the action
include rights arising under the Bankruptcy Code, thereby making
it a core proceeding over which the Court has jurisdiction.

The Court agrees with the Buyer.  The Production Line Group
did not object to the language in the Sale Order which gave the
Buyer the rights, claims and defenses of the Debtor, estate and
Trustee.  The Buyer assumed certain potential liabilities of the
bankruptcy estate; it should be allowed to utilize the rights,
claims, and/or defenses of the bankruptcy estate that it also

19

acquired.  Rights under section 544 arise under title 11, and therefore, the Court concludes that it has subject matter jurisdiction over those rights.

Finally, the Court finds that it has "related to" jurisdiction over the Section 541 Claims because the bankruptcy estate is not completely insulated from the outcome of the Production Line Group's state law claims.  The Sale Order and the APA make clear that the Buyer assumed only certain liabilities related to the Production Line Group's Complaint.  The Buyer is only liable to the extent that the WIP Aircraft are to be returned.  However, the Production Line Group has asserted that its members' potential recovery is not limited to a right to have the WIP Aircraft returned to them.  The Complaint alleges that the Debtor was in possession of deposits totaling approximately $15 million.  Under the terms of the APA and the Sale Order, recovery could not be had against the Buyer for the deposits because it did not assume any liability for any monetary claims against the Trustee.  Instead, any such recovery would be due from the estate.

Further, if the Court were to find that the WIP Aircraft was property of the estate at the time the Sale Order was entered, then the Buyer need not return the WIP Aircraft to the Production Line Group.  However, the Production Line Group might then have a claim against the estate.  See 11 U.S.C. §§ 101(5), 101(10), and

501(a).  Therefore, the Court's determination of whether the WIP
Aircraft was or was not property of the estate will affect the
estate and other creditors of the estate.

The test for determining whether related to jurisdiction
exists is whether the outcome of that proceeding could
conceivably have any effect on the estate being administered in
bankruptcy.  Pacor, 743 F.2d at 994.  Because the WIP Adversary
Proceeding will affect the estate and other creditor's recovery,
the Court finds that it has at least "related to" jurisdiction
over those claims.  28 U.S.C. § 1334(b).


IV.  CONCLUSION

For the reasons set forth above, the Court concludes that it
has jurisdiction over the Section 541 Claims in the WIP Adversary
Proceeding and, therefore, will deny the Plaintiff's Motion to
Dismiss.

An appropriate Order is attached.


                                   BY THE COURT:


Dated: August 4, 2010
                                   Mary F. Walrath
                                   United States Bankruptcy Judge


21